IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARKETING WERKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 13 C 7256 |
| | ) | |
| BRIAN FOX and FOXSANO MARKETING, INC., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Marketing Werks, Inc. filed a five-count verified complaint against Defendants Brian Fox and Foxsano Marketing on October 9, 2013. According to the complaint, Marketing Werks is a Chicago-based marketing firm that specializes in event production for clients. Marketing Werks employed Fox as a senior account executive. In this role, Fox was primarily responsible for Marketing Werks' Indy Racing League ("IRL") account and had access to Marketing Werks' confidential information and trade secrets related to the IRL account. On August 4, 2013, Fox left his job as a senior account executive at Marketing Werks. After leaving Marketing Werks, Fox continued to access his Marketing Werks email account. Although Fox told his employer and colleagues that he was leaving Marketing Werks to work for a vendor, Fox formed his own company, Foxsano, and submitted a bid for the IRL account. Both Marketing Werks and Foxsano are final contenders for the 2014 preferred marketing contract from IRL, which Marketing Werks expects IRL to award on October 11, 2013.

Marketing Werks alleges that Fox and Foxsano used Marketing Werks' confidential information and trade secrets in their effort to secure the IRL account. Marketing Werks'

1

complaint alleges that: (1) Fox violated the Stored Communications Act; (2) Fox and Foxsano violated the Illinois Trade Secrets Act; (3) Fox and Foxsano tortiously interfered with Marketing Werks' business expectations; (4) Fox breached his fiduciary duty to Marketing Werks; and (5) Fox and Foxsano conspired to interfere with and steal the IRL account. On October 10, 2013, Marketing Werks moved for a temporary restraining order ("TRO") against Fox and Foxsano. Marketing Werks relies on Fox's violation of the Stored Communications Act, Fox and Foxsano's violations of the Illinois Trade Secrets Act, and Fox's breach of his fiduciary duty in its motion for a TRO. After hearing arguments from counsel for each side, this Court denied Marketing Werks motion for a TRO.

## LEGAL STANDARD

The standard for the issuance of a TRO is the same as that required to issue a preliminary injunction. *See Crawford & Co. Med. Ben. Trust v. Repp et al.*, No. 11 C 50155, 2011 WL 2531844, at *1 (N.D. Ill. June 24, 2011). One must demonstrate a likelihood of success on the merits, that he or she will suffer irreparable harm absent injunctive relief, and that he or she has no adequate remedy at law to obtain a preliminary injunction. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). If the party seeking the TRO meets these requirements, then this Court must balance the harm that party will suffer against the harm the other party will suffer should this Court grant the TRO. *See id.* This Court must also consider the public interest in granting or denying an injunction. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

## DISCUSSION

Marketing Werks has shown a likelihood of success on the merits of its Illinois Trade Secrets Act claim. But the harm to Marketing Werks if it loses the IRL account to Foxsano is not

irreparable. Nor is Marketing Werks without an adequate remedy at law. Consequently, Marketing Werks has not shown that a TRO is appropriate in this case. Moreover, having considered the balance of harms between the parties as well as the public interest, this Court finds that the equitable considerations counsel against a TRO.

I. **Likelihood of Success on the Merits**

    A. **The Stored Communications Act**

The Stored Communications Act makes it an offense to intentionally access "without authorization a facility through which an electronic communication service is provided" to obtain "access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a). The Stored Communication Act permits a civil action in cases where the offender acts with a knowing or intentional state of mind in view of Fox's alleged purpose. 18 U.S.C. § 2707(a). Here, Marketing Werks has shown that Fox likely accessed Marketing Werks server after August 4, 2013. What Marketing Werks has not shown, however, is that Fox accessed any specific information that would suggest a knowing or intentional state of mind. Marketing Werks also has not shown that Fox did not have authorization to access Marketing Werks' server. In short, Fox's password still worked. Despite Marketing Werks claim that it made a mistake when it failed to shut down Fox's password after he left Marketing Werks, that argument does not create a likelihood of success on the merits because there is no indication that Marketing Werks rescinded its authorization.

    B. **The Illinois Trade Secrets Act**

The Illinois Trade Secrets Act protects information that "is sufficiently secret to derive economic value . . . from not being generally known to other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the

3

circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d). The Illinois Trade Secrets Act protects against the actual or threatened misappropriation of trade secrets. *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1267 (7th Cir. 1995). A plaintiff must prove the existence of a trade secret and that the defendant misappropriated it. *Id.* at 1268. Here, Marketing Werks has shown that its IRL account strategy for the 2014 contract year, which includes information related to its pricing, budgets, market and consumer research, data, designs, plans, and materials, is likely a trade secret similar to the trade secret recognized in *PepsiCo*. Marketing Werks has also shown that it had policies in place prohibiting Marketing Werks' employees from disclosing information such as this.

In *PepsiCo*, a strategic plan that detailed plans to compete, financial goals, and strategies for manufacturing, production, marketing, packaging, and distribution for the next three years qualified as a trade secret. *See id.* at 1265, 1270. Therefore, an employee with knowledge of this strategic plan could not work for a competitor because the employee would inevitably disclose that strategic plan in the course of his duties, which would provide a substantial advantage to the competitor. *Id.* at 1270. Here, Fox likely had similar information related to Marketing Werks' 2014 IRL account strategy. And Fox and Foxsano likely used that information to bid for the IRL account despite Marketing Werks' confidentiality policy. Therefore, Marketing Werks is likely to prevail on its Illinois Trade Secrets Act claim.

    **C.**    **Breach of Fiduciary Duty**

"To succeed in a claim for breach of fiduciary duty, a plaintiff must prove the following elements: (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013). A fiduciary relationship "may arise as a matter of law, such as between an

agent and principal, or it may be moral, social, domestic, or personal." *Id.* Here, Marketing Werks has not shown that Fox solicited the IRL account before August 4, 2013. Marketing Werks also has not shown that Fox owed Marketing Werks a fiduciary duty after Fox left Marketing Werks. Therefore, Marketing Werks has not shown that it is likely to succeed on the merits of its breach of fiduciary duty claim.

**II.      Irreparable Harm**

This dispute concerns the IRL account for 2014. At argument, Marketing Werks explained that IRL has awarded its account to Marketing Werks for the past three years. Marketing Werks also explained that Fox was primarily responsible for that account. Currently, Marketing Werks and Foxsano are two of three firms vying for the 2014 IRL account. Because there is a third company in play, it is not certain that either Marketing Werks or Foxsano will receive the 2014 IRL account. Moreover, because IRL awards the account annually, Marketing Werks will have to submit another bid next year. By then, the information Fox has will likely be outdated. Consequently, any harm to Marketing Werks likely does not extend beyond one year. Moreover, Marketing Werks has not shown that the IRL account is so large that its loss will significantly affect Marketing Werks' revenues. And to the extent that IRL prefers to deal with Fox based on its dealings with him during the last three years, Fox has already left Marketing Werks and no further harm can result in this regard. For these reasons, this Court finds that Marketing Werks has not shown that it will suffer irreparable harm if this Court does not enjoin Fox and Foxsano.

**III.     Adequate Remedy at Law**

This dispute concerns a fixed-length contract. Marketing Werks has at least three years of data that shows the value of the IRL account to Marketing Werks. Should IRL award its account

to Foxsano, the parties will know the value of the 2014 IRL account. To the extent that the value of the IRL account to Foxsano differs to that of Marketing Werks, Marketing Werks' confidential information at issue here will likely permit an expert to predict what the value of the 2014 IRL account to Marketing Werks would have been. For these reasons, this Court finds that there is an adequate remedy at law.

### IV.    Other Considerations

Even if Marketing Werks had met the threshold requirements for a TRO, other considerations counsel against a TRO. In balancing the harm between the parties, this Court applies a sliding scale approach in that the greater the likelihood of success on the merits, the less the balance of harms need favor the plaintiff. *See Ty, Inc.* 237 F.3d at 895. This Court must weigh all factors "sitting as would a chancellor in equity" to determine whether a TRO is appropriate. *See id.* at 895-96. Here, the monetary loss to Marketing Werks will likely be a small portion of its annual revenues. In contrast, Foxsano is a new enterprise whose continued existence likely depends on the IRL account. But Marketing Werks' likelihood of success on its Illinois Trade Secrets Act claim mitigates any harm to Fox and Foxsano.

That said, other considerations counsel against a TRO. To be clear, the manner in which Fox formed Foxsano and then bid for the IRL account, at least according to Marketing Werks, is questionable. Yet Marketing Werks is not blameless as it failed to implement stronger protections for its confidential information and trade secrets. Moreover, Marketing Werks failed to restrict or investigate Fox's computer use until it learned that Fox was going to be a competitor.

Marketing Werks also delayed in seeking emergency relief. According to its pleadings, Marketing Werks learned that Foxsano was a final contender for the 2014 IRL account on or

about September 23, 2013, and started investigating Fox's access to the Marketing Werks' server on or about September 25, 2013. On September 26, 2013, counsel for Marketing Werks sent a letter to Fox demanding that Fox withdraw Foxsano's IRL account bid. Marketing Werks then chose to wait until the day before IRL was to award the 2014 account to seek a TRO. On balance, the events leading up to this motion and the effects they have had or will have do not warrant a TRO.

## **CONCLUSION**

For the reasons stated in open court and herein, this Court denies Marketing Werks' motion for a TRO.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 11, 2013